Good morning, and may it please the Court, I'm James Laughlin, and I represent the appellant Israel Araiza. With the Court's permission, I'd like to reserve three minutes of my time for rebuttal, and I'll watch my own time. The primary issue in this appeal is whether Judge Reel abused his discretion when he intruded upon the jury's deliberations by first inquiring into the status of those deliberations, then ordering it to return its verdict on Count 1, and then sealing that verdict while it continued to deliberate on Count 2. Judge Reel himself acknowledged that he had no reason to do that in this particular case. It's just his normal trial practice, something he apparently does whenever he dismisses a deliberative jury for the evening. In other words, he's adopted an across-the-board rule that he applies in all cases rather than exercising his discretion on a thoughtful basis based on the facts of a particular case. That constitutes an abuse of discretion. Assuming district courts retain the ability to take partial verdicts during deliberations in some circumstances, even though it's not authorized by the plain language of Rule 31, what Judge Reel did here was still improper because he acted without good cause and due caution. An en banc panel of this Court recently noted in Harrison v. Gillespie that the importance of a jury's deliberations cannot be overstated. Harrison involved a deadlock jury where, unlike here, there's a real reason, a legitimate reason for a trial court to inquire into the status of jury deliberations. But even then, the Court recognized that its review of a judge's decision to make such an inquiry must be guided by two fundamental principles. First, that an inquiry into a preliminary jury determination can have a coercive effect on the jury. And second, that such an inquiry may elicit the jury's tentative or preliminary vote rather than its final verdict. With regard to the second point, the Court said that because of the significance of the entire deliberative process, the jurors' preliminary votes in the jury rooms do not constitute a verdict, even if unanimous. It therefore properly expressed concern that an inquiry into jury deliberations can have a coercive effect given the risk that some jurors might mistakenly permit a tentative vote to become an irrevocable final vote and forego the opportunity to gain new insights through further deliberations. Other circuits have applied these fundamental principles to the taking of partial verdicts and concluded that the practice can be so coercive that it should be done only when absolutely necessary and only by taking appropriate precautions. In the United States v. Benedict, the Eighth Circuit found an abusive discretion based on facts similar to those presented here. Nothing in the record suggested that the jury was facing a deadlock. Neither party asked the trial judge to take a partial verdict, and in fact, the defendant objected to it. And the judge didn't leave it to the jury's discretion whether to announce a partial verdict after informing the jury of the consequences of doing so. The Eighth Circuit also found it particularly troubling that the relevant counts were so closely related that it was difficult to imagine the jury continuing to deliberate on one count without having to reweigh the evidence on the other count. Let me ask you this. I personally think you have a legitimate gripe. I haven't thought the whole thing through, but you've convinced me that there's a problem with what happened. Is that an automatic reversal, or do we review for harmless error, or what? In this case, it's an automatic reversal because the government has waived harmlessness as to this issue. It did not argue harmlessness in its brief. As I pointed out in the reply brief, this Court's general rule is that when the government does not argue harmlessness, the Court does not reach harmlessness, and it reverses if there's error. There is an exception to that rule for extraordinary cases, but this is not an extraordinary case. This is a case where the general rule should apply. Whether the issue is harmless is at least debatable, particularly given what happened with the jury note that was addressed immediately before the verdict was sealed. As the Court will recall, the jury asked for instructions on what knowingly possessed means, and even though they asked that in connection with count two, they were given the general Ninth Circuit pattern jury instructions for knowingly and possession, which obviously apply equally to count one, which was knowingly possessing drugs with the intent to distribute. But immediately after giving those, and those instructions weren't given the first time around in jury instructions, so those were new instructions, and immediately after giving those new instructions, which directly pertained to count one, and even though the jury had been deliberating for only an hour and a half at that point, that's when Judge Reel cut the process short and said, I want you to give me your verdict on count two, or count one, and I'm going to seal that, and you can't reconsider it when you go back to consider count two. So I think that that establishes, A, that there's very definite error, but I think it also addresses the harmlessness of the inquiry. I think that the general ---- Roberts. I'm sorry. I'm not catching the connection between his answer to the note and the sealing of the verdict. What's the connection between the two? Well, I was addressing Your Honor's question about harmlessness. As I said, I ---- Right. And you say it's you could establish harmless, and it was harmful if you had to because of the juxtaposition of the note and the verdict. Correct. And I'm saying I don't catch that connection. Because it makes it ---- the fact that the jury was asked for and was given instructions that apply equally to count one as much as they apply to count two, that reinforces the ---- what should be obvious in any event, given the offenses and the evidence of trial, is they could not deliberate on count two without potentially reweighing the evidence on count one. If they're trying to figure out ---- remember, according to the government's case, the gun and the drugs were found pretty much right next to each other. And so if they're having thoughts about, okay, was he knowingly possessing this gun, and through those deliberations some people change their mind, you know, you're right, and maybe those same issues would cause us to reconsider, you know, what our tentative vote was on whether he knowingly possessed the drugs. And it's exactly that kind of potential coercive effect that makes the taking of partial verdicts so, as this Court said echoing other circuits in Harris v. Gillespie, a delicate, it's a very delicate matter. And I think that here there was a very real risk that once count one was set in stone by this improper procedure, the jury, you know, didn't have the same freedom and deliberations to, I mean, not only reject, they certainly couldn't go back to reconsider count one, and they may have felt constrained on what they could do with count two, because otherwise they'd have to return inconsistent verdicts. Counsel, just to assume for the discussion that we were to affirm, your client does have an opportunity from November 1st on, does he not, to seek an adjustment? You mean under 3582? Right. I think so, but I don't think that's the appropriate remedy here. And let me explain why that is. I don't think that the Court needs to reach whether Mr. Verrilli's sentence is substantively unreasonable or even what it should do with regard to the recent retroactive crack amendments. And that's because of Judge Reel's plain error in failing to explain his sentence. He, I mean, what he said was, I find the sentence to be just under the circumstances, in my opinion. That is not, does not comply with the minimum standards set by the Supreme Court in Rita and this Court in Cardi. In other words, you're arguing that he didn't apply the 3553A factors? Correct. Or he didn't explain how he applied it in a method allowing for meaningful And I think we have the case that's very similar to the other cases where the Court has found plain error under the circumstances and sent it back for an opener sentencing. All right. But assuming, again, just for discussion, I'm trying to focus on what happens on November 1. What are his rights as of November 1? I do believe he would qualify to be able to file a 3582 motion for a sentence reduction. The issue, as this Court got into during the last case, is what that, what limitations there might be on that, whether the FSA would apply or not. If this case was to be remanded for an open resentencing, as I believe it should be, based on the first, on the error with regard to the explanation of the sentence, but also under the Godin case, I think just based on this Court's own equitable powers to do what's just and to recognize that the sea change in this area of sentencing law since the FSA and the retroactive guidelines, both of which were enacted after my client was sentenced in August of 2009. And in light of the post-Booker situation we have now, where guidelines are just a tool used by the Court in setting the appropriate sentence, the fair thing to do is to send this non-final sentence back to the district court so it can exercise its discretion in the first instance to decide how to apply the new guidelines. And at that time, I would hope that the government would take the same position as it does in other cases that are being sentenced now after August of 2010, that the FSA doesn't apply. Very well. If you might want to reserve the rest of your time. You may do so. We'll hear from the government. Thank you. May it please the Court. Max Scheiner, appearing before the United States. I'll address the taking of separate verdicts first. In this case, the felon is seeking to overturn a jury verdict that was final. The jury came to a final verdict before a person said it had. The result was announced in open court. The jury was polled not once but twice upon the taking of the verdict on count one and again upon the end of the trial. And no dissent was registered by any juror by word or action. And so all of the requirements of a final verdict were met. Now, what about his argument that if they had to think about it overnight, perhaps they might have come back with a different verdict? The felon is asking, is engaging in speculation. The rule has always been, at least since 30 years ago when this Court decided, United States v. Ross, that the procedure of taking a partial verdict does not necessarily influence a jury in its deliberations. Ross cited Justice Hand's decision from 1932 that stated that this process, an objection to this process, would only promote irresponsible hesitation and tell them, the jury, that they must reserve their decision altogether until they got through. The appellants had no right in their subsequent vacillations. Appellant here is asking for a right in subsequent vacillations, even though we don't know what they are. Like I said, the rule is contrary to the longstanding rule that partial verdicts are allowed, and defendant is claiming he was deprived of a very real possibility of change of heart or mind on the part of the jury, but points to nothing in the record, as was present in Benedict, that would indicate that that possibility was very real. Let me distinguish Benedict for a moment. The only case Are you saying, then, that this was, if it were error, it's harmless? I am arguing that. He says you waived that. He says we waived it, but we have a dispute here over how the prejudice or harm should be regarded by the Court. Did you raise harmless error in the brief? I raised, I didn't call it harmless error. I raised the issue of prejudice as part of what we think this should court, how this court should apply the abuse of discretion standard. Let me just think this through with you. If we were to hold that Judge Reel abused his discretion by doing what he did, your next step, then, would be to say, well, but it caused no harm, no prejudice, no, you fill in the blank because of what? He polled the jury twice, what? Because unlike in cases, in other words, what I'm saying is that the rule for applying abuse of discretion here is, first has to account for the fact that the taking of partial verdicts is normally allowed, but it is not allowed in cases like in Benedict where there are circumstances that indicate that doing so either coerced the jury's verdict in some way or intruded into the jury's deliberation. You're saying it wasn't an abuse of discretion. Correct. I'm saying, assuming we find that it was. I think you go to harmless review, but I just want to clarify what I'm saying with abuse of discretion, that I think that the harm goes into that analysis first, which is why I regarded it that way in our opening, in our brief. But even if the court were to find that the abuse of discretion without looking at the harm in step one, it would go to the harmless error analysis. And there is no harm here because unlike the only case where reversible error was found that was cited by Defendant Benedict, there are no circumstances to indicate that anything suspicious about the taking of the verdict. Remember in Benedict, all those factors that Appellant has cited were mentioned, but only as a prelude to a longer discussion about the inconsistency of the verdicts that the jury eventually reached. The jury found the defendant guilty on the aiding and abetting post office theft and then came to a deadlock on the conspiracy to commit post office theft, where the evidence in those two counts was precisely the same. It involved the same crime, whether the defendant aided or abetted it or engaged in a conspiracy to commit it. So in that case, the evidence was inextricably intertwined, and in this case the evidence is separate. Count one in this case required the jury to determine that the defendant engaged or possessed with intent to distribute narcotics. Count two required them to reach that verdict as a predicate to going on to deciding the other elements of count two. So having reached that verdict, they began to determine whether the defendant knowingly possessed the firearm in furtherance of his drug trafficking. The other one --- Sotomayor When Judge Riel asked the jurors if they had reached a verdict on either count, and the response was that they had as to one, had the jury or had the jury foreman signed the verdict form on that count? Itsunclear from the record. The judge made that inquiry, which I would interject as was a very objective and nonintrusive inquiry, have you reached a verdict on any counts? The foreperson immediately replied yes. There was no other, there was no dissent by any juror. The judge asked, do you have those verdicts with you? And the foreperson said no. He didn't say whether he had signed them or not, but it may indicate to this court that the verdicts were completed but in the jury room. We don't know for sure. But we do know that the judge sent the juror to the jury room to retrieve them, did retrieve them. The jury was polled and stated that they were those verdicts. At that time they were polled? Yes. And then polled again at the conclusion of when count two came in? Yes. On both counts? Yes. Do you see anything in Rule 31 that would authorize Judge Riel to do what he did? I think Rule 31 has very limited applicability to this case because as. . . Yes, but my question was, is there anything in Rule 31 that would authorize him to do what he did? It doesn't deal with the situation that we're talking about. It states where. . . Well, it deals with, there's a section called partial verdicts, multiple counts. That's. . . Right, but 31b says where the jury is unable to reach a verdict. Right, exactly. It deals with deadlock situations. Precisely. So it authorizes in deadlock situations partial verdicts to be taken. In that situation, right. It's silent about this. It is. So I guess the answer to my question, is there anything in the rule that would permit him to do it? The answer is no. The answer is no, and I don't think the rule is applicable because that would mean that the rule as it stands now obliterates the longstanding rule that partial verdicts are normally allowed. And that is the Ross case? Yes. Which predated the change to Rule 31. It does, but counsels are trying to lead into this change in Rule 31, a prohibition where Rule 31 was amended to clarify that partial verdicts are allowed. You think they would have said it if that's what they intended, didn't you? To. . . Right. In the case of multiple defendants, the section that deals with multiple counts, what we're talking about, is completely silent about that. I think that they would have said that partial verdicts are not allowed under any other circumstances if they would have wished to change the rule that partial verdicts are normally allowed. But I think if the question is, is there a significance between the difference between Part A and Part B of that subsection? Part A deals with multiple defendant trials where generally deliberations are longer, trials are longer, issues are more complicated because the jurors are dealing with different charges for different defendants. And so stating at any time during deliberations may clarify that a jury doesn't have to. . . I can think of many good reasons why they wrote it that way, but, you know, they didn't provide for what Judge Reel did. No, they didn't, but the commentary to it does, would lead the court to conclude that no practical change was intended because that's what it says. Does the Morrison case, that's our in-bank case, tell us anything? It's not Morrison. Excuse me. Harrison v. Gillespie? Well, it tells you that a judge should not intrude into deliberations by polling a deadlocked jury. That's what happened in Harrison. That is not what happened in this case. The judge made the brief objective inquiry. Brief objective inquiry is what is allowed under Ross, simply asking, has the jury reached a verdict? The danger that this Court cited in Harrison was that intruding into asking, intruding into the jury's deliberations by asking questions to the jurors, where do you stand on the death penalty? Have you eliminated the death penalty from your consideration? Ran the very clear risk of turning those tentative votes into final votes. We don't have that situation here. We have a final vote. The foreperson said so. It's clear from the record that that foreperson believed it was a final verdict. No juror dissented. They were immediately polled and all agreed. So there's no intrusion like we had in Gillespie here. Is this a common practice in the central district? And I personally have never seen this before. I don't know. I've never seen it before. I'm sorry I can't address that. I'll move on. Anything further? Well, would the Court like me to move on to the evidentiary issues? Yes. Okay. So with regard, I would just note, because you brought it up with Appellant, that the defendant has the 3582C remedy here. How would that work? We're talking November 1st on, right? Yes. How does that work? I believe on November 1st when the substantive retroactive amendments go into effect, the defendant could bring that 3582C motion. The scope of it would probably be dictated by this Court's decision in the case argued previous to R.S. Sykes. But I don't think that – I think essentially he would get the application of the new lowered amendment guideline range, which would put him at 110 to 137, if I'm not mistaken. I'm sorry. What numbers again? 110 to 137, if I'm not mistaken. I believe that the mandatory minimum 120 would apply for the arguments that you heard in the last case. And also because I don't think that the – that Appellant's argument that 3582 can be used to apply the mandatory minimums retroactively and thus essentially defeat the entire holding in Baptist, contrary to Congress's intention that the mandatory minimums should not be retroactive, should be this Court's holding. So I think that's my answer to that question. Any further questions? Thank you. No further questions. Thank you, counsel. Thank you. Mr. – I'm sorry, I lost your name here. Lachlan. Lachlan. Mr. Lachlan. Excuse me. I'm sorry, Mr. Lachlan. Thank you. You have some reserved time. Thank you. First, I'd like to respond to Judge Alarcon's question about the procedure that took place when the judge reordered the verdicts. Government counsel is correct that the record is unclear about that, that the jury was – the foreman was asked to have the verdict with him. He was sent back to the courtroom, came back with something that was signed at that point, and then the jury was pulled. But I think under this set of circumstances, there exists a very real possibility that what happened was the answer to the judge's initial question was, yeah, we voted on this, as preliminary votes often happen during the deliberative process. And then once Judge Real ordered them to return the verdict, the foreman very well and the jury very well thought they had to then sign the form and affirm it. And the reason I wanted to address that, because it goes back to Judge Silverman's earlier comment about harmlessness, I still don't think the court should reach that because the government waived the issue. But if it does, I think that that scenario affects the harmlessness inquiry. It becomes an example of what Judge O'Scanlan brought up when he mentioned the Harrison case. And I think one of the interesting things about the Harrison case is it talked about the fundamental principles that we need to take a look at when we look at jury – I mean, court inquiries into jury deliberations. The main thrust of that is that it has to be very cautious. And I'm hoping that in light of that, I think the government – it sounds like the government was backing off its initial proposition in its brief that a court needs no cause to start asking the jury about the deliberations. I think after Harrison, you can't make that argument. But what Harrison does is it stresses the possibility that even making any kind of inquiry will turn a tentative vote into a permanent vote. And I think given the scenario that would happen, that even makes it more likely in this case that that's very well what could have happened. And then finally, with regard to Judge Silver – Let me interrupt you for a moment. Is your point, then, that by requiring the foreperson to go get the verdict for him and then polling the jury and then signing it precluded them from changing their mind? Yes, because he said they will be sealed. And I think that left no – and he certainly didn't instruct the jury that they could then go back and revisit it. And I think that every – the tenor of the hearing was that they could not, because he was taking it away from them, sealing it. So in his words, there will be no problems with that. So – and then finally, with regard to Judge Silverman's question about whether this is a common practice, I know of no other judge in the Central District that does it. But as the record reflects, Judge Reel said, we do this many, many times, and you should know that. So I do think that unless this Court tells him that it's not proper, it will continue at least in that courtroom. So unless the Court has any other questions, I'll submit. No further questions. Thank you. Thank you very much, Counsel. The case just argued will be submitted, and the Court will adjourn.
judges: Alarcon, O'scannlain, Silverman